First case please, Nicole. Good morning, your honors. I'm Sarah Hornstra. I represent the defendant, the City of Chicago. May it please the court. Ms. Hanley brought this personal injury action after she fell while crossing Michigan Avenue in 1996. She identified as the cause of her fall a depression in the pavement where there was a pothole, and there's no dispute that the city at some point within the year prior to her fall had repaired the pothole. And there's also no dispute that the repair, that there was some sort of depression, that the asphalt that had been placed in the hole had either compressed somewhat or eroded. Ms. Hanley sought to recover damages on the theory that the repair job was inadequate and thus the city failed to meet its obligation to keep its property in a reasonably safe and That's her burden of proof, right? That's her burden of proof. That is her burden of proof. That's correct. Well, what happened with this affirmative defense? What was that all about? Did that shift the burden on the issue? Well, it didn't shift the burden. What it did essentially was, it became no defense at all. It was, I mean, among the several elements that Ms. Hanley had to prove in her case in that the condition was unreasonably dangerous and that the repair was not completed in a reasonably safe and skillful manner. The affirmative defense, you know, for it to really operate as a defense or as an immunity, the premise would have to be that even if the city failed to meet its obligation, that it would be immunized if the injury was a result of a discretionary policy decision. The way this actually went to the jury, it was no defense at all because it, as an element, required the city to prove that the pothole was repaired in a reasonably safe and skillful manner. That was the exact flip side of... But you never reached that issue in the affirmative defense until the jury has first decided, in the plaintiff's burden of proof, that the pothole was unreasonable. That's absolutely correct. So it would have never reached it. That's absolutely correct. And so if, in fact, I mean, we first, I mean, we disagree that it was error to send the affirmative defense to the jury, but more importantly, if there was any error, it was obviously harmless, and harmless error is never a reason to grant a new trial. And so the circuit court's decision in this case... Is this a standard of review for a motion for a new trial? For reversing a granting of a motion for a new trial? It's abuse of discretion, but where the court... It's a tough burden. It is, but if the court commits an error of law, it's always an abuse of discretion, and unless there's a showing that there was prejudice in an error... I mean, the issue whether there was an error is a legal question. I mean, really, that should be de novo review as far as the legal question. As far as whether there's any prejudice from the error, that's abuse of discretion, but there's absolutely no indication that there was any prejudice to this. The jury was instructed... Let me start over. Where did the judge come up with this instruction that she gave to the jury? Which to me sounds like no instruction at all. I think... You know, what do I know? Yeah, well, I think where it came from, to be honest, it is from this court's opinion, the 2003 opinion in Hanley, where the court said, if the repair was inadequate, the section 2201 defense fails, and the judge was quite clear that she was going to allow the city to present the defense, but that the defense could only succeed if the city showed that the repair was done properly, and so the language was added that the city had to show that a discretionary polydisease decision and that the pothole was repaired in a reasonably safe and skillful manner. But as we've said, because that was the flip side of one of the plaintiff's burden, it was not a defense at all, and so necessarily, if... I mean, and the jury was clearly instructed that it only could reach the affirmative defense if it found that all the elements of the plaintiff's case had been proved. If it was determined, or if the jury, the fact finder, decided that this was... Don't they have to decide preliminarily whether this is discretionary or... What's the other word I'm looking for? Ministerial? The jury only has to... The only jury only could reach the issue of whether it was a discretionary decision if it first found that Hanley, the plaintiff, had met all of the elements of her case in chief. So in order to get to the affirmative defense, they had to find that the city failed to repair the pothole in a reasonably safe and skillful manner. So if they've reached the affirmative defense, they've necessarily found that it wasn't a safe repair. So the way they get to the affirmative defense... However, you know, you've got a plaintiff here that... It seems to me there's a trial error in submitting that affirmative defense instruction. And putting myself in the plaintiff's shoes, is the plaintiff getting a fundamentally proper, good hearing on their case when the jury is wrongly instructed that there's some sort of vague affirmative defense out there that can quash his entire case? It absolutely was a fair trial. If there was an error... So your answer to Judge... No. I would have to make sure I understood the way the... The answer is yes, it was a fair trial because what the city was allowed to do was present evidence that the method of repair adopted for pothole repair was discretionary immunity. My view of this is it doesn't... It's not appropriate to look at it as an immunity defense in this case. The plaintiff's theory of liability... Repair was not done reasonably safe and skillful manner. The only evidence that the plaintiff had to show that anything was wrong with the way this repair was conducted was her expert from Texas who has said that the better way to repair a pothole is you need to take certain tools, either a jackhammer or diamond bit saws that require a generator. You have to cut out around the edge of any pothole before you fill it. Use a blowtorch to dry it out. That you should always use hot asphalt mix, or if you use cold mix, you should replace it later with asphalt mix. Steps that the city... The crews aren't equipped with those tools. That's not how potholes are repaired in this city. This is Michigan Avenue where we'd have to shut down traffic to do a 15-minute pothole repair on every single pothole. And so aside from the issue of discretionary immunity, I think the evidence that the city presented about how it repairs potholes and how it selected a different method really just went to the question of whether this was a reasonably safe and skillful repair under the circumstances. The city does not have the obligation... I mean, it's an unfortunate fact of life that Chicago is, you know, perhaps the pothole capital of the world, that we, you know, have to repair a lot of potholes. We do it with the resources that we have. And the theory of liability here... I mean, the city has an obligation to keep its streets and crosswalks in a reasonably safe condition. It's not the case that it's liable anytime a plaintiff can come forward with an expert that says, there is some other possible repair method out there that might have given you a better result. And the theory of liability here, that expert also, to show that the pothole was unsafe, his testimony was that this depression, which one witness described as about the size of a basketball, a little bit sunken in, would have caused the majority of people who stepped in it to lose their balance and trip and fall. Who makes the determination as to whether the repair was done in an appropriate manner? The jury. Now, humor me, humor me. Was there... What they did, what the city did in this case, was that ministerial or was it discretionary? The actual filling of the pothole, there's really no evidence about whether that's discretionary or ministerial. And I think on the case law, it's sort of difficult to view the filling of a pothole as a policymaking decision. I mean, I'll concede that there's difficulties with trying to present that defense, and that was the nature of the defense that was presented previously that this court had reversed summary judgment on. But that was not the nature of the defense that was presented at trial. No, no, not at all. I don't think you're answering my question. Very simple question. Was it ministerial or was it discretionary? Filling the pothole? Yeah. I think there's an argument to be made on either side, but we're not arguing that it was discretionary. But it could be perceived by the 12 people, good and true, that it was ministerial. It could also be perceived by those same people, possibly, that it was discretionary. Yes. And I actually don't think there was any other, you know, other than the crews sort of decide as they're out there how to fill the potholes. You know, I don't know that there was specific evidence that filling the pothole was discretionary, and that wasn't something that the city argued. That wasn't the basis of the theory of the defense. Tell me, why did the judge grant a new trial? I couldn't tell you. She issued a written order. Didn't she understand the order? Not really, to be honest. Me neither. She decided that, you know, based on the 2003 decision, it was law of the case. Okay, stop. Okay. Where? Where in that decision, the 2003 decision, do we get to the point of law of the case? Or how do we get to the point of law of the case? You didn't, Your Honor. The case was a summary judgment. It was granted for the city, and that was appealed. And what did this court say? That there wasn't evidence that filling the potholes was discretionary, that there wasn't evidence for summary judgment. So there's two. A question of fact, which would preclude a decision on summary judgment. That's correct. And isn't that what the opinion said? That's correct. That's correct. So now how can we get law of the case out of that? You can't. And there's also that the nature of the defense that was presented at trial was very different. So, I mean, that premise for the circuit court's opinion was certainly wrong. And then from that wrong premise, the circuit court just said in a conclusory fashion that it was prejudicial. One more question, and then I'm going to let Judge Harris speak up. Okay. And now the question just slipped my mind. Isn't that amazing? Oh, after this case went back to the trial court, there was some stuff happened. Right. And then the plaintiff, as was her right, took a voluntary notice. That's right. And they also had a right within a reasonable period of time, a year or whatever, to refile, which they did. Right. Now, would anything that transpired in the other case carry over as a possible law of the case to the new case? Not according to Long v. Alborno, which we cite in our brief that says that in a refiled case, things that happened before was not law of the case. So that's another problem with it. There's also, apart from the instruction sort of nullifying itself, as we also explained in our brief, there's the presumption that an error is harmless if there are other valid grounds that could support the jury's verdict. And here, obviously, there were multiple other grounds that could have supported the jury's verdict and no special interrogatories to test the verdict. And under that, the error is presumed harmless. This affirmative defense, how did it evolve at trial? What did you come in to affirmatively defend on, and then it got convoluted into you're taking on the burden of proof on this issue? I don't understand how it even arose. It was a response to the plaintiff's theory of liability because, again, the basis for her argument that the repair was inadequate was her expert's testimony that, you know, a much more extensive repair method should be used and that we should use tools that the city has decided not to equip its workers with. And so it was that level of decision making. And I don't mean to suggest that we, that the city took on the burden of proving. It's part of the case. Well, Gorda absolutely put the burden in your lap. To prevail on the affirmative defense. But in the first instance, of course, the burden remained with the plaintiff. But, you know, I agree that what it really meant was that it just wasn't an affirmative defense at all because it flipped the burden of proving something. I seem to feel it's trial there. I think that affirmative defense was trial there. The only question that has to be decided was it so prejudicial that you didn't get the plaintiff or defendant that it was harmless there. Well, I think, you know, it's certainly an error to say an affirmative, but that wording makes it an erroneous defense because it makes it no defense at all. But in that case, if there's prejudice, it's to the defendant, not to the plaintiff. And so there's certainly no. . . You know, the plaintiff knows they have to convince 12 people. And when you've got an affirmative defense out there, who knows how a jury is going to interpret it. So you worry about it as a plaintiff.  And that's why. . . And I think they probably convinced the trial judge here, post-verdict, that you interjected something that was there and the jury was worrying about it, so we're entitled to a new trial. But I would disagree that injecting the issue of the city's methods of pothole repair and its discretion to do that was error at all. Put aside, you know, the issue of 2201 immunity, it was an appropriate. . . I wouldn't view it as an affirmative defense so much as the city's answer to the plaintiff's effort to show that the repair was inadequate because the plaintiff said. . . I mean, the basis for the plaintiff's expert was you need to do, you know, use more extensive efforts. Our response was that's not practical to do it that way. And that's not how the city does pothole repairs. And that's a reasonable response. If there aren't further questions, I'll save the rest of my time for rebuttal. But I'm happy to answer more questions if you've got them. I'd like to give you a few minutes in rebuttal. Okay. Thank you. Good morning. You are Mr. . . . Stephen McClain from Philip Marr and Associates for the Appalachee-Maryland Hanway. Your Honor, I'd like to emphasize a few things off the bat from Judge Starks' order granting the new trial. She quoted directly from Justice Carnesius' written opinion in the previous Hanley appellate decision on page 2 that the determination of whether the repair was adequate is material to the plaintiff's claim because defendant is liable for the negligent performance of a ministerial repair task. If the repair was inadequate, defendant's Section 2-201 affirmative defense fails. She said in the last paragraph, of course, she quoted extensively from the Hanley appellate decision as a basis for her ruling. She also made a specific finding that the court finds that the evidence does not support defendant's argument that the workers had discretion in repairing potholes. She, in effect, was saying I should have entered a directed verdict on the issue of whether or not this was discretionary because there was not evidence that the workers had discretion. Therefore, she's making a finding in her order post-trial that this was, in fact, a ministerial task in this case. So to the extent that Morrissey... How could she say that? Because she heard the evidence. Let me quote from the prior opinion. Therefore, the actual repair here, the filling of the pothole, could be considered a ministerial task for which defendant has no immunity if negligently performed. Correct, but this is after the trial. She's talking about the evidence that she heard in the trial. I'm talking about in her... In this decision, in the first decision, we never said it was ministerial. We never said it was discretionary. We said there's not enough facts where we can make that determination. And that it has to be... It sure sounded to me like from her order that she was saying or she was indicating that we, we, the appellate court, said this was a ministerial act, and we didn't say that. This is why I'm emphasizing this, Judge, because what I believe she was doing was after the trial was over and in response to our post-trial motion and looking back over her notes and thinking back over the evidence, she realized, and she says, the evidence does not support... She means now, in this case, after I've heard all the evidence, the evidence does not support defendant's argument that the workers had discretion in repairing potholes. So to the extent that Morrissey in other cases said it has to be decided on a case-by-case basis, she's saying on a case-by-case basis, in this case, there was no discretion. It was ministerial. And therefore... Well, so let me rephrase. Let me rephrase that in a different light. So what the judge seems to be doing is taking over the job of the jury who heard all the evidence and made a decision. Well, the jury was never asked in this case, Judge, to make a determination of whether or not this was discretionary or ministerial. They were simply given this affirmative defense first based on a draft proposed by the city and then changed by Judge Starks herself with no... I, on behalf of the plaintiff, Marilyn Hanley, continue to object to it all the way through. But the defendant and Judge Starks together crafted this affirmative defense instruction. That instruction that was given, didn't that, in effect, wipe out the immunity? No. They started out by saying, maybe correctly or incorrectly, I don't know. But then... Let me ask this. If the immunity defense prevails, it doesn't make any difference how they fix the hole. Am I correct? Correct. And the problem is, Judge, that the instruction as given tells the jury that if you have first found that the plaintiff has proven all five elements of her burden of proof in the issues instruction, then you are to consider the city's affirmative defenses, and the first affirmative defense is this discretionary immunity. And that's precisely opposite, we contend, of what the ruling should be based on the prior appellate decision because that decision said, if the repair was inadequate, the Section 2-201 affirmative defense fails. And that's what Judge Starks quoted in her order. She realized that, and here we had strong expert testimony that the repair was inadequate, created a hazard, was not done in a reasonably safe and skillful manner. So the jury is being told that... Point to me in the old opinion, or the first opinion, where it says what you're now saying. Or in rephrasing it, that it was... Yes, it's on, Judge, in at one... Let's see, this would be the Buildeck decision, I believe. 277 Illinois decisions at page 149 in the first column is where it says the exact words that Judge Starks quoted. The determination of whether the repair was adequate is material to plaintiff's claim because defendant is liable for the negligent performance of a ministerial repair task. If the repair was inadequate, defendant's Section 2-201 affirmative defense fails. And based on that, the jury should not be told that if you have found, first found, that the repair of the pothole was not done in a reasonably safe and skillful manner, in other words, that the repair was inadequate due to negligence, then you are to consider the affirmative, the Section 2-201 affirmative defense. That's precisely opposite to the language of the Hanley appellate decision, and Judge Starks realized that after the fact. The city argues that this affirmative defense instruction was harmless and was not prejudicial to plaintiff. I would respond to that in a number of ways. Number one, Judge Starks, in the last paragraph at the bottom of page four of her decision, says twice in that sentence that it was prejudicial to the plaintiff. She made a specific finding in her order that it was prejudicial to the plaintiff, and she granted a new trial because she thought it was so prejudicial that it warranted a new trial. Number two, the language in the instruction, quote, and that the pothole was repaired in a reasonably safe and skillful manner, that was added where it says if you find from your consideration of all the evidence that the defendant's affirmative defense has been proved and that the pothole was repaired in a reasonably safe and skillful manner, then your verdict should be for the defendant. That extra language did not alleviate the prejudice to the plaintiff in the giving of this affirmative defense on its discretionary immunity. Because the jury already knows that if they find that the pothole was repaired in a reasonably safe and skillful manner, that they find for the defendant. But they're told that if they have already found that the pothole was not repaired in a reasonably safe and skillful manner and that negligence practically caused the plaintiff's injuries, then they are to consider this affirmative defense. So that counters and completely takes out or creates the prejudice, in spite of this additional language, to the plaintiff because the jury is being told to do something that they shouldn't be doing.  It confuses the jury because the jury is being told, consider this affirmative defense even though you've already found that the plaintiff proved all five elements of the plaintiff's burden of proof. Sir, excuse me for interrupting, but let me ask you, how do we know how the jury found for the defendant here? Did they find for the defendant because the plaintiff failed to prove the element of an unreasonable repair, or did they find for the defendant because the defendant proved their affirmative defense? We can't be certain, Your Honor. We can't be certain. We can't be certain. But many cases, Judge, as I'm sure you're aware, say that when you have a close case, when the facts are close, as they were in this case, any significant error should result in the granting of a new trial. Well, on the other hand, wait, on the other hand, there's a good body of law out there that says that you only get a new trial when the jury's verdict is against the manifest weight of the evidence. So if this is a close case, then there's no new trial, because it couldn't be against the manifest weight of the evidence. Well, in this case, Judge Starks granted the new trial because she made a specific finding of prejudice to the plaintiff. In this instance, obviously, she must have felt that it was close enough that the giving of this affirmative defense created significant trial error, and it afforded the jury an erroneous basis on which to find for the defendant. The defendant invited the court to make the error by tendering a jury instruction with this affirmative defense. I agree with you. I find trial error in the submission of that affirmative defense, in my opinion. I, however, question whether or not that error was not harmless. Well, the city certainly cannot show that this erroneous affirmative defense was not the basis of the jury's verdict of not guilty. If this two-issuer rule that the defendant talks, or the city talks about, was strictly applied, it would be nearly impossible for any appellant to win a new trial, because any time one could say that there was some other basis on which the jury could have reached the verdict that they did, then no matter how egregious the error, a new trial would not be granted. Is there any discussion at any point in this case about possibly submitting to the jury a special interrogatory? At one point during jury – it was either during jury instruction conference or the next morning when we came back with some corrected instructions. Judge Stark specifically stated there will be no special interrogatories. Now, at one point, I believe, Judge, if my recollection is correct, the city had initially proposed some special interrogatories, but we had objected to the phrasing the way they were phrased, and Judge Starks did not give them for that reason, because she found that they were not correctly phrased. It's our contention, from the plaintiff's standpoint, that we had no obligation to tender a special interrogatory. From my perspective as plaintiff, why do I want to give a special interrogatory asking the jury, do you find that the city has proven their affirmative defense of exercise of discretion in the filling of the potholes? Because then if I get a general verdict in favor of the plaintiff, but they answer yes to the special interrogatory, the city contends special interrogatory controls and I lose. If I had somebody looking over my shoulder, another attorney might even say, what in the world are you doing tendering a special interrogatory like that? So, no, I did not tender a special interrogatory, and we contend that we had no obligation to do that for the city in this instance. And it would have been contrary to our client's best interests. I have an obligation to represent the plaintiff and represent her best interests. In regards, the council made some remarks about Dr. Bynum's testimony regarding repair of the pothole. It's important to realize this was a very special pothole. The city's own expert, Dr. Sim Sutt, testified that this was a crosswalk at Michigan Avenue in Ontario where one and a half to two million people per year walk through that crosswalk. And this big 29-inch across pothole is right in the middle of that crosswalk, right between the lines. It's seen in the photographs which are in the record. And so this is one and a half to two million people per year were exposed to walking through the crosswalk where this pothole was, and Dr. Bynum simply said, yes, you can do a proper repair if you take 15 minutes to do it like council suggested. Maybe that does mean you have to stop traffic for that length of time. And all they did, the city's testimony, is they just take a broom, a little whisk broom or a regular broom, they sweep out what loose debris there is. They don't really worry about, you know, if they get some water out, fine. Then they throw the cold mix in and they roll it out and go to the next one. What Dr. Bynum said was that will never work where you've got cars like this driving over the pothole. It's not going to last at all because the pressure of the tires is just going to push that asphalt right up out of the sides of this curved bottom depression. You simply have to take the time to cut down the sides and square it out so that the pressure, once the cars are going over it, the pressure on that asphalt is pushed out to the sides and it has nowhere to go. Then the asphalt stays in the hole. And you've got to get the water out of the hole. If you expect it to take, you can't throw in the cold mix over on top of wet water that's still in the hole. You've got to get it dried out. And they said, well, how can you dry it out? Well, you can use blowtorches or something that can be used if you need them to dry it out if you have to do that. And how do we cut the pothole? Well, yeah, you can cut the pothole with a jackhammer or a diamond cut saw if you need to square it out to make it possible to get it squared out so that the asphalt won't get pushed out by the cars. So that's how those things came up in the testimony. But the city wants to make it sound like Dr. Bynum said, in every single pothole that you repair everywhere in the city, you have to do it his way, regardless of the location. And that was not the way the testimony came down. Is there anything you can point to, sir, that can demonstrate to us that this jury got to even consider, reached the point where they were considering the affirmative defense? Because it appears for me of the reading of the record, this jury may very well have decided that the plaintiff failed in one of its elements in the burden of proof, your obligation to show that it was an unreasonable fix. And decision for defendant? No, obviously, Judge, I have no way of going behind the jury's verdict, but neither does the city. So how can we say that this decision was an unreasonable fix? The city doesn't want to go behind it. Right. Right. But they can't say that the affirmative defense was not the basis for the not guilty verdict. And I submit, your Honor, that if that approach is taken, then any time you have, you know, bad jury instructions, for example, erroneous jury instructions given in a trial that should be a basis for reversal in a new trial, the aggrieved party would be out of luck if there's anything else in the record or any other basis in the record for the jury's verdict. In almost every case, particularly, for example, in medical malpractice cases, you can find some other basis on which the jury may have made the determination that they did and returned the verdict that they did. And are we to say, therefore, that parties are to have no remedy for significant trial error just because the jury had some other basis in the record on which to return the verdict that they did? I think that's terribly unfair to parties. And it can work, obviously, against defendants as well as plaintiffs. And that should not be something which I think should be ingrained in the law or carved in stone. I think that we need to have a system of appellate justice in which the ‑‑ if there's serious error which afforded a basis for the jury to reach the verdict that they did, then a new trial should be granted to the aggrieved party. For every wrong, there should be a remedy. Nothing further from the case, sir. Thank you. Thanks very much. Just a few brief remarks, Your Honors. I take plaintiff's counsel to basically be arguing against the application of the two issue rule in any circumstances, which is very well established by this Court and our Supreme Court's precedence. And it's not the case that in any situation where there might be some basis for the jury's verdict, there's never reversible error. But when there are multiple independent grounds that could support the jury's verdict, the law presumes that an error in one issue is harmless. And there's good reason for that, and that's judicial economy, that it makes no sense to entirely scrap the result of a trial just because it's possible to speculate that some error affected the jury's verdict. There's a way to avoid having to do that speculation, and that's to present special interrogatories to test the verdict. Now, I understand as a matter of trial strategy here, plaintiff had reasons for not wanting to do that, and there was no obligation to do so in the first place. But if a plaintiff or a defendant, after a trial where there's multiple grounds for the jury's verdict, seeks to obtain a new trial, then they cannot stand on speculation about what might have influenced the jury's verdict. So even though, as the Circuit Court pointed out here, there was no obligation for plaintiff to tender special interrogatories in the first place, having elected to forego those and, in fact, to object to the city's effort to put in special interrogatories, they have no basis to complain about a possible error that might have influenced the jury's verdict. And in this case, it's clearer than in most. I mean, again, although even where an error might have influenced the jury's verdict, that presumption applies under the two-issue rule here. It's actually just not possible that the discretionary immunity offense affected the jury's verdict because juries are presumed to follow the instructions. And here they were instructed that they could only reach the affirmative defense of discretionary immunity if they found that the plaintiff met all of her burdens. If the plaintiff had met all of her burdens, that would have meant that the jury would have already found that the pothole was not repaired in a reasonably safe and skillful manner. And with that finding, they could not possibly have found for the city on the basis of their discretionary immunity defense. Why not? How can you be so certain of that? They may very well have gone through an analysis of the plaintiff's case, decided the plaintiff approved whatever they had approved, but then they went over to this affirmative defense instruction, which this discretionary immunity thing, which is an instruction that's borderline ambiguous. And they were instructed that if they found the city met the elements of the affirmative defense and they found that the pothole was repaired in a reasonably safe and skillful manner, then their verdict should be for the defendant. The only way they would have reached that defense in the first place is if they had already found that the pothole was not repaired in a reasonably safe and skillful manner. So, I mean, of course it's always possible to speculate that a jury didn't follow the instructions, but the legal presumption is that they did, and for good reason. Because otherwise you could always speculate about, you know, possible problems with the jury's verdict. And we'd be tossing out, you know, the results of lengthy trials all the time. And that's obviously not the rule that this court follows or that the trial courts should follow. And I think that what the court did here was an effort to try to follow the 2003 Hanley decision. I don't think that what the court did, you know, was in keeping with that decision, but if there was any ambiguity or any error, it was obviously harmless. And the circuit court's statement here that there was prejudicial is entitled to no deference. It was entirely conclusory. It completely ignored the arguments that the city made about the two-issue rule. You know, the city had pointed out that there were other grounds for the verdict and there weren't any special interrogatories to test it. The court's response was simply to say, well, the plaintiff wasn't required to put in special interrogatories, as we've explained. Of course, that's not the plaintiff's burden in the first instance, but it is actually a requirement to seek a new trial on a general verdict where there were multiple issues. I think, you know, the overriding principle here is that Ms. Hanley was the plaintiff in this case who had to meet all the elements of her, she had the burden of proving all the elements of her case. And it seems most likely here the jury's verdict just reflects that. It decided that either this pothole was, you know, not unreasonably safe or that the repair was as good as could be expected, the city could be expected to do under the circumstances. And with no, you know, as long as that ground for the verdict stands, it hasn't been disproven. It's not the city's burden to prove that the affirmative defense was not the basis for the jury's verdict. It is the burden of the party seeking a new trial. And plainly that burden hasn't been met here because there's absolutely no chance that there was prejudice to the plaintiff. Thank you, Your Honors. We would ask that the circuit court's decision granting a new trial be reversed and the jury's verdict be reinstated. Thank you very much. The case will be taken under advisement and we are in recess. Thank you.